1

1    UNITED STATES DISTRICT COURT

     DISTRICT OF SOUTH DAKOTA          **FILED**

2    SOUTHERN DIVISION                 MAR 1 3 2000

3    \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*          _CLERK_

     \*

4    United States of America,          \*     CR. #99-40061

     \*

5                          Plaintiff,   \*

     \*

6       -vs-                            \*     SENTENCING

     \*

7     Martin Uphoff,                    \*

     \*

8                          Defendant.   \*

     \*

9    \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

10   BEFORE:        The Honorable Lawrence L. Piersol
                    Chief United States District Judge
11                  For the District of South Dakota
                    Sioux Falls, South Dakota
12

13   APPEARANCES:   Ms. Rita D. Allen
                    Assistant United States Attorney
14                  Sioux Falls, South Dakota

15                  Attorney for the Plaintiff.

16                  Mr. Steven G. Haugaard
                    Attorney at Law
17                  Sioux Falls, South Dakota

18                  Attorney for the Defendant.

19
     PROCEEDINGS:   The above-entitled matter came on for
20                  hearing on the 9th day of December,
                    1999, commencing at the hour of 11:00
21                  a.m. in the courtroom of the Federal
                    Building, Sioux Falls, South Dakota.
22

23

24

25

1              THE COURT:  Appearances, please.

2              MS. ALLEN:  Rita Allen, Assistant United States

3       Attorney, for the government.

4              MR. HAUGAARD:  Steve Haugaard appearing on behalf

5       of Martin Uphoff.

6              THE COURT:  I apologize for the delay in starting

7       this morning.  Part of it was reading the things that were

8       filed this morning.  And I think not only the motion by the

9       defense, but likewise the various family letters.  And I've

10      read all those things.

11             All right.  Now, in addition to those things, is

12      there any evidence that the defense wishes to introduce

13      with regard to the sentencing?

14             MR. HAUGAARD:  No, Your Honor.

15             THE COURT:  Does the government have any evidence

16      it wishes to introduce?

17             MS. ALLEN:  No, Your Honor.

18             THE COURT:  With regard to the objection to

19      Paragraph 39, it says that the Paragraph 39 should refer to

20      the testimony of Doctor Paul, and Paragraph 39 does refer

21      to the testimony of Doctor Paul, but I think that the point

22      that -- so it does refer to -- Paragraph 39, as I say, does

23      refer to testimony of Doctor Paul.  I think that the

24      presentence report, you know, the writer doesn't have the

25      advantage of having sat through the entire trial and heard

---

DAKOTAH REPORTING AGENCY
605-338-8898

1    all the testimony, and the transcript of the entire trial

2    is not available at this point.  So while the jury verdict

3    was clearly supported by the evidence in my opinion, as

4    I've already ruled, I think that some of the testimony at

5    trial was in support of the defendant with regard to his

6    mental illness, and the effect of it was somewhat stronger

7    than Paragraph 39 states.  And I make that notation for the

8    record in part so that the people in the Bureau of Prisons

9    that are doing the assigning of the defendant to a facility

10   can be aware that that's the Court's view, and that they

11   don't look just at the presentence report because I sat

12   through the trial, and the writer doesn't have that

13   advantage.  So, you know, to that extent, the objection to

14   Paragraph 39 is granted.

15        I don't believe any of the objections with the

16   exception, of course, of the request to depart downward

17   affect the offense level.  Is that correct, Mr. Haugaard?

18        MR. HAUGAARD:  I think that's correct, Your

19   Honor.

20        THE COURT:  All right.

21        MR. HAUGAARD:  I guess I would correct myself

22   only to the extent that, as I believe I mentioned in my

23   motion for downward departure, I believe the criminal

24   history is over-stated in light of the fact that the priors

25   were committed during the same period of time essentially.

4

1   It was apparently -- sentencing took place at the same

2   time.  And --

3           THE COURT:  Go ahead.

4           MR. HAUGAARD:  Then in addition to that, I do

5   believe the defendant accepted responsibility for his

6   actions in light of his testimony, so I believe he should

7   be given credit for that also.

8           THE COURT:  First of all, with regard to your

9   points that you raised in your memo with regard to that

10  being the same manic episode, even if it were, the two

11  incidents were about a month apart, which doesn't prevent

12  it from being in the same manic episode, but it would mean

13  there would be two separate arrests.  And for the

14  sentencing guidelines on a criminal history, if you have

15  two separate arrests, you know, for something that happened

16  at different times, those are considered separate, even if

17  they were, you know, as you've argued, a part of same manic

18  episode.

19          Now, on the other hand, do you have any evidence

20  that -- aside from being sentenced at the same time on both

21  of those unrelated -- I think unrelated instances, with the

22  exception that even -- I say unrelated without regard to

23  the manic episode argument, but do you have any evidence

24  that the arrest was one arrest separated by a month and

25  quite different events?  I assume they were two different

1    arrests.

2                MR. HAUGAARD:  I believe they were.  I think

3    there is also some -- as I was trying to do research for

4    this, I believe there is some support for the Court

5    recognizing that some of these incidents over-represent --

6    the criminal history is over-represented given various

7    factors.  And the fact that permeates this case is the

8    mental illness.  And so it's on that basis I believe it's

9    over-represented.

10               As I was going through the Guidelines Digest, I

11   found some -- one additional case, U.S. versus Govan, 152

12   F.3d 1088 which made reference to over-statement of

13   criminal history.  And those are the -- I haven't reviewed

14   the cases myself, but -- other than the blurb in the

15   digest, but these are the kind of situations I believe that

16   you are given discretion to consider whether it's

17   over-represented or --

18               THE COURT:  What page in the digest?

19               MR. HAUGAARD:  It's on Page 806.

20               THE COURT:  First Circuit, Eleventh Circuit?

21               MR. HAUGAARD:  Didn't note that.  It's on Page

22   811, third case from the end of the digest.  A Nevada case.

23               THE COURT:  I'm sorry, I can't hear you.  811 and

24   what?

25               MR. HAUGAARD:  811, and it's a Nevada case, the

1        third case from the end of the page.

2                THE COURT:  I see.  Ninth Circuit case.  Well,

3        yes, I mean that's clearly the law, and I depart fairly

4        often on that basis if I think that the criminal history

5        significantly over-represents the seriousness of a criminal

6        record or the likelihood that someone will commit further

7        crimes.

8                What does the government have to say about that?

9                MS. ALLEN:  With regard to whether the criminal

10       history has been over-stated in this case, it's been

11       under-stated.  It shows basically the conviction in 1994

12       and violation of protection order conviction in 1994.  The

13       record that was made when we gave notice of intent to use

14       evidence of other crimes was an affidavit of Mr. Uphoff's

15       ex-wife, and that affidavit certainly indicated that there

16       had not been one incident, but several incidents where the

17       defendant has broken into her home.  And, in effect, the

18       defendant admitted the same on the stand.

19               But in any event, there were -- it was not just

20       one violation of the protection order which is a Class 1

21       misdemeanor in state court.  The evidence was that there

22       were a series of burglaries which are felonies in state

23       court.  And also with regard to whether it was a manic

24       episode or whether he was competent at the time, he was

25       represented at the time, he -- an evaluation was conducted

1    after I believe the charge for violation of protection

2    order.  So his competency or the seriousness of the

3    offense, of the number of offenses that occurred, certainly

4    isn't a case where the criminal history was exaggerated.

5         THE COURT:  Well, but I have to decide this on

6    the record that I have, including the presentence

7    investigative report.  And the other things you talk about,

8    Miss Allen, in terms of several other break-ins which you

9    claim in the nature of burglaries and clearly violations of

10   protection orders, I don't have anything in the record with

11   regard to that, so I don't believe I can consider that in

12   determining whether the criminal history is under-stated or

13   over-stated.

14        MS. ALLEN:  Well, with regard to what is in the

15   presentence report, there are the two offenses, and

16   there's -- they occur at different times, so -- they may

17   have been sentenced at one time.  I believe there are two

18   judgments on that also.

19        THE COURT:  I wasn't talking about that. I was

20   talking about the other things that you argued, you know,

21   with with regard to other incidents.  I'm without any

22   judgments or police reports or anything.  I can't consider

23   those because they are not in the PR, they are not in the

24   record, they weren't brought up at the trial either.

25        MS. ALLEN:  I believe that they were brought up

1    at trial as far as the burglary was concerned.  I believe

2    that was his testimony.  The government is not asking for

3    the Court to find that the criminal history was

4    under-stated.  But definitely criminal history has not been

5    over-stated in this case.

6          THE COURT:  The breaking into the house was

7    brought up at trial, but I thought that was the same thing

8    as Paragraph 24 of the presentence report.  Now, at trial

9    the fact that he made contact with his two children wasn't

10   brought up, as I recall.  What was brought up was that the

11   defendant broke into his ex-wife's house which had been his

12   house, too, I suppose, but wasn't --

13         MS. ALLEN:  That's right.

14         THE COURT:  So are you claiming that this one

15   point is different than the incident that was brought up at

16   trial?

17         MS. ALLEN:  I think that may be correct, and I

18   could be corrected here, but I think he was maybe charged

19   with two -- was he charged with two violations of the

20   protection order?

21         MR. HAUGAARD:  Not that he recalls.

22         MS. ALLEN:  That's possible.  I'm not sure.

23         THE COURT:  Well, does the -- Miss Zimbelman, do

24   you have any information on that one way or the other?

25         PROBATION OFFICER ZIMBELMAN:  The information

1    that I have is what is in the presentence report of those

2    two incidents of arrests.

3          THE COURT:  Because, of course, you don't have

4    the benefit of having been at trial, and -- well, what was

5    brought out at trial, I've summarized it as best I can

6    recollect, which didn't have to do with the two children,

7    but had to do with breaking into the house which also would

8    have been a violation of the protection order, among other

9    things.  But I don't know if that's the same incident as is

10   reflected in Paragraph 24 because at trial it wasn't pinned

11   down, you know, so closely with regard to date because, of

12   course, Paragraph 24 of the presentence report has it

13   because it has a date of disposition.

14         Well, the reason, of course, whether it's one

15   criminal history point or two is important is because of

16   the possibility of the application of safety valve under

17   the guidelines, and because of the five qualifying

18   criteria.  First one is the defendant does not have more

19   than one criminal history point as determined in the

20   sentencing guidelines.  But the second point is that -- of

21   the five is that the defendant did not use violence or

22   credible threats of violence or possess a firearm or other

23   dangerous weapon in connection with the offense.  So the

24   question under the second point would be whether the

25   defendant did not use violence or credible threats of

1    violence, and the guidelines list arson as a crime of

2    violence, 4B1.2, Application Note 1.

3           So I'm getting ahead a little bit, but

4    nonetheless, the defense raised also the safety valve

5    application because -- but under the definition, I don't

6    see that safety valve can fly because of part two, without

7    regard to the criminal history question.  Do you have any

8    other authority on that point, Mr. Haugaard?

9           MR. HAUGAARD:  Well, I was hoping that I could

10   find some.  The other thing that I observed is that I think

11   it would be somewhat related to something in the nature of

12   an unloaded gun or something like that.  But also the

13   portion of it that refers to the credible threat of

14   violence.  There's -- the incident itself took place at a

15   time when no one was around, there was no credible threat

16   of violence toward anyone.  And so based on that, I think

17   that it's, again -- as I've looked at this case, he just is

18   on the edge of all the criteria.  And it's given that

19   circumstance that I think that the general authority, the

20   purpose and intent of the guidelines, gives the Court the

21   authority to recognize that, and to do the just thing.

22          Personally I think the case -- and categorize it

23   with similar cases where maybe it hadn't been arson.

24   Maybe -- I was thinking a similar situation would be where

25   someone would come to the federal building and attack the

1    door people.  How much damage would be there, what kind of

2    offense would that be.  So anyway, I just don't think it's

3    a credible threat of violence.  So I think that's a

4    potential for exception.

5              MS. ALLEN:  Your Honor, with regard to the

6    incident, I'm looking at the affidavit of Mrs. Uphoff, and

7    those are -- they are different incidents because the

8    affidavit was signed in '92.  The other charge is '94, so

9    they are definitely two incidents.

10             THE COURT:  Couldn't hear the last of what you

11   said.

12             MS. ALLEN:  They are definitely two incidents

13   because the affidavit which was the basis of the breaking

14   into the home was signed in 1992, and the other charge

15   arose in 1994, so they are two separate incidents.

16             THE COURT:  Is that in the record some place?

17             MS. ALLEN:  Yes.  On the notice of intent -- the

18   document is government's resistance to motion in limine and

19   second notice of intent to submit evidence of other crimes,

20   wrongs or acts.  And the affidavit that was attached to

21   that answering affidavit is a four-page affidavit, and it

22   is signed July 22nd, 1992.

23             THE COURT:  All right.  Let me ask the clerk what

24   docket numbers those are.  I have -- it's Docket 63.  Just

25   a moment.  You are you talking about the answering

1    affidavit of Kellee Uphoff?

2         MS. ALLEN:  Yes.  And then also on the first page

3    of the government's resistance to which that is attached it

4    does refer to checking himself into the psychiatric ward in

5    February of 1992.

6         THE COURT:  Just a moment.  (Brief pause.)  Yes,

7    it does look like the one we talked about at trial is 1992,

8    and then the other matter is 1994.

9         I find that the criminal history category does

10   not over-state the defendant's criminal history.  Criminal

11   history category II does accurately reflect the defendant's

12   criminal history.  I say that because I have to, in my view

13   as a judge, rule on the basis of the facts involved, even

14   if I would prefer to have the latitude to apply the

15   exception so that the Court could, if it chose, apply

16   5C1.2.  But criminal history points are two, and I think

17   Mr. Uphoff earned them, and I can't change that.  And it

18   would be improper for me to do that in order to reach an

19   end where I would like to have more latitude under the

20   guidelines.

21        Then with regard to point two, 5C1.2, of the

22   application of that limitation on statutory minimum

23   sentences, 4B1.2 and (a)(1) simply says arson.  And when

24   you look at the statute then, of course the federal statute

25   18 United States Code Section 844(i) splits it out.  And

1   for instance, it would have been -- if a personal injury

2   would have resulted to any person, then it's a mandatory

3   minimum of not less than 7 or more than 40 years.  But, of

4   course, that wasn't the case, but that's why I -- this is a

5   mandatory minimum of five years instead.  And guidelines do

6   not distinguish between the different, so to speak, levels

7   of arson, just arson.  And so arson, with its potential for

8   danger to people, even though it didn't result in anything

9   happening to anybody in this instance -- nobody was even in

10   the building, nor was it implied anybody would be.  Despite

11   that, under the guidelines, under 5C1.2, the defendant

12   wouldn't meet that criteria either.  So 5C1.2 is not

13   available for those two reasons.

14          With regard to the defendant's acceptance of

15   responsibility, there can be acceptance of responsibility

16   if, for instance, there is a constitutional issue at stake

17   in a case, and it has to be tried in order to preserve the

18   issue.  That wasn't the case here.  It was -- it's true

19   that with regard to the operative facts, there wasn't too

20   much argument on those.  The argument was with regard to

21   the defendant's capacity and state of mind at the time of

22   the offense conduct.  But that's -- that is just simply

23   another element of the offense.  Sometimes the element of

24   the offense is whether the defendant did it or not.  That

25   wasn't the case here.  But when it's just an element of the

1       offense, there is always at least one element of the

2       offense at issue or there wouldn't be a trial unless it is

3       a constitutional issue, preservation of some other unusual

4       things like that.

5               So acceptance of responsibility is not available

6       to the defendant here.  That would have been available only

7       if the defendant under the facts of this case would have

8       pled to the offense, which he did not.

9               So the mandatory minimum is applicable.  And

10      there is no basis available to the Court for a downward

11      departure in this case.  So the mandatory minimum of 60

12      months is applicable.

13              With regard to the other points raised by the

14      defense objection one to Paragraph 10 is overruled.  The

15      objection to Paragraph 11 is overruled.  The facts at trial

16      support that reckless endangerment during flight.  I take

17      that from the testimony that was given at trial.  I've

18      overruled the objection to Paragraph 12 because there is

19      not an acceptance of responsibility within the meaning of

20      of the guidelines.  Paragraph 4 of the objections is

21      overruled.  That deals with Paragraphs 14 through 22, and

22      2B1.3 was the appropriate application.  Paragraph 5 is

23      overruled.  There is no evidence to the contrary other than

24      the objection itself.

25              The additional information considered written in

1       Paragraph 6 which deals with Paragraph 2 itself of the

2       presentence report, I considered the additional information

3       with regard to the defendant's father continuing to suffer

4       from bipolar disorder and he continues to experience manic

5       disorders which resulted in hospitalizations during the

6       defendant's trial.  And I will note for the record also

7       with respect to the father's history, that one of the

8       letters deals with that also, with regard to the father

9       actually being in an episode and being hospitalized shortly

10      after the trial.  And so the information in Paragraph 29 is

11      accepted and considered by the Court for sentencing.

12              With regard to Paragraph 32, which is defendant's

13      Objection 7, I'm not going to retry the divorce case, but I

14      believe what is stated in Paragraph 32, from what I've

15      gathered in the trial and elsewhere in this case, is

16      substantially correct.  That objection is overruled.

17              The objection to Paragraph 37 is overruled.  I

18      think that was largely supported at trial.  There was

19      contrary testimony, too.  But I think Paragraph 37 is an

20      accurate statement -- is an accurate statement.

21              I've already commented on Paragraph 39, and want

22      the people at Rochester or wherever the defendant goes or

23      whoever determines where he goes to likewise pay a good

24      deal of attention to Doctor Paul's diagnoses because he has

25      treated the defendant for a long time.

1          Or  of the problems with the mandatory minimum

2     sentence is,  course, that absent the safety valve

3     applying, an  've already ruled that safety value doesn't

4     apply in thi  ase, and that deprives the Court of the

5     ability to a  y anything other than the mandatory minimum.

6     Of course, t  mandatory minimum comes out above the range

7     of the guide  es.  The guideline range is 41 to 51 months.

8     The mandator  inimum is 60 months.

9          Al  right.  Are there any objections that you

10    have made, M  Haugaard, that I haven't ruled upon now?

11         MF  HAUGAARD:  I don't believe so, Your Honor.

12         TH  COURT:  Mr. Uphoff, is there anything you

13    would like t  say before sentence is entered?

14         TH  DEFENDANT:  Your Honor, I would like to show

15    you that the  is a good side to me.  Up until now I think

16    you've only  n the bad side.  I hope that you see that I

17    am an ordina  person 99 percent of the time.  I never have

18    had a drinki  or drug problem.  I regularly participate in

19    church activ  les, including recently two trips to Grand

20    Forks, North  akota for restoration after flood damage.  I

21    frequently c  ribute to the local charities.  And I'm not

22    looking for  at on the back, but I want you to see that I

23    am not just  man out looking for trouble.

24         In  uly, '99, I started taking Depakote.  Most

25    doctors say  t this will help mania, which is the

1    problem.  In most cases if a person has an illness,

2    authorities concentrate on dealing with it.  People with

3    mental illnesses have a difficult burden to deal with.  Why

4    are these people treated or why are these people served an

5    additional burden of incarceration where they are unable to

6    get help.  We would not put a blind man in jail for

7    crossing the street at the wrong time.  Why are mentally

8    ill treated differently?

9         Your Honor, it wasn't my intention to ask that

10   you release me for the time that I have served under your

11   conditions.  Since age 14 through the present time, I've

12   been required to serve a substantial amount of time in

13   jails, in mental institutions due to my mental illness.

14   Your mercy would be greatly appreciated.  Thank you.

15        THE COURT:  Thank you.  Anything further,

16   Mr. Haugaard?

17        MR. HAUGAARD:  I guess I would just like to cite

18   some information for the record I guess.  It's in the

19   Guidelines Digest, Page 791, there is a reference to I

20   believe it's the case of U.S. v. Leandre, 132 F.3d 796.

21   Down in the references there, about the middle of the page,

22   it indicates, "Downward departure under sentencing

23   guidelines for significantly reduced mental capacity

24   applies to all crimes equally, and may be considered by

25   sentencing judge even if the fact finder rejected the

1    defense of insanity or diminished capacity."

2         I make reference to that because I believe that,

3    as was stated in another case, guidelines do not and cannot

4    account for all factors and combination of factors that are

5    properly considered in sentencing, and the departure

6    mechanism acknowledges that.  I think the departure in this

7    case -- I still think departure in this case is

8    appropriate.

9         THE COURT:  Let me interrupt because, you know, I

10   do because you have been in front of me plenty of times.

11   The thing is, though, with a mandatory minimum, even if the

12   sentence -- even if it falls outside of the heartland, or

13   even if there are mitigating factors, frankly I'm without

14   authority to do anything about it unless you show me what

15   you quoted there is so.  But that's the problem with

16   mandatory minimums, and that is why we shouldn't have

17   mandatory minimums unless you can show me some authority

18   beyond that.

19        MR. HAUGAARD:  Well, I guess I can't other than

20   the fact of the cases I've cited.  There's additional cases

21   that make reference to mitigating factors.  There is the

22   case of U.S. v. Walters, 87 F.3d 663.  It is a money

23   laundering case.  The defendant received no benefit from

24   the crime.  Similar, in this case, the defendant received

25   no benefit from this crime.  There is -- there is no

1    purpose to it.  He -- anything other than manic state.  The

2    record knows that.

3            THE COURT:  Walters wasn't a mandatory minimum

4    case though either.

5            MR. HAUGAARD:  I understand, Your Honor.  I cited

6    those cases for the record.  I believe if the Court feels

7    it's bound by mandatory minimums, that that's inappropriate

8    consideration given all the other mitigating factors in the

9    case, given the fact of the individual's mental illnessess.

10   There are cases that I have come across, I don't know that

11   I made note of those specifics, but cases where the

12   departure took place because the defendant was a homosexual

13   and slight features, and so the Court determined it to be

14   inappropriate to incarcerate the individual.

15           Similarly in this case.  Martin is going to find

16   himself in manic situations that guards will not recognize

17   until it's too late.  And, again, I believe that endangers

18   Martin, other prisoners, the prison staff, and is patently

19   unfair to put him in that situation.

20           There is also departure to facility

21   rehabilitation, U.S. V Jones, 158 F.3d 492.  And I think it

22   is disproportionate between this particular crime and that

23   it's a violation of the Eightth Amendment in regard to

24   punishment to punishment -- punish Martin Uphoff to the

25   extent that mandatory minimums call for.  I think that's in

1    and of itself a basis for departure.  I think there is a

2    sentencing disparity when you compare it to state offenses.

3    I don't think you can find a state offense which would come

4    up to these mandatory minimums given the circumstances.

5    Likewise, any of the federal offenses given the amount of

6    damage that was involved in the crime.

7         So combining all the things, the over-stated

8    criminal history, the purpose and intent of the sentencing

9    guidelines themselves -- they are intended to be

10   guidelines.  They are not intended to be something that

11   would place a judge in a position of being unable to do

12   what he believed was just and merciful in a given case, but

13   just guidelines.

14        And that's why I think that the broad range of

15   authority granted in 5K2.0 states that the Court may depart

16   from the guidelines even though the reason for departure is

17   taken into consideration in determining the guideline range

18   if the Court determines that in light of unusual

19   circumstances the weight of that fact under under the

20   guidelines is inadequate or excessive.  I think it's

21   clearly excessive in this case, to place this five year

22   sentence, given the circumstances.

23        I think I've cited all the cases I have I wanted

24   to cite, and I referenced as much as I could in my motion.

25   Didn't have enough time to pull all the cases like I prefer

1    to, but I think we have covered the general flavor of those

2    cases.

3           I would just like to state for the Court, too,

4    there are a lot of people who would have liked to have been

5    here today and speak on Martin's behalf, but I think that

6    gets to the point where we have covered this and covered

7    this and covered this.  So I submit it to the Court, the

8    letters the family has sent, Doctor Paul and reference his

9    comments along the way.  He had no doubt that Martin was in

10   a manic state at the time this took place, and he had

11   nothing to gain from coming in here and misstating anything

12   about Martin's condition.  He was -- he has treated him for

13   long enough to know what is manic and what is not, and he

14   recognizes that this was a manic.

15          Martin's continuing to have problems as he is in

16   the jail even here trying to monitor his medications he is

17   on.  He has continued tremors.  They started Risperdal

18   recently, but that doesn't appear it's the reason for

19   tremors.  They have to adjust the medication some more.  I

20   think it's very important Martin have access to adequate

21   treatment.

22          I think his case is quite unusual.  I'm sure my

23   bill in this case is several hundred now, and most cases

24   are not like Martin's cases.  He has such subtle features

25   to his mental illness, that it's extremely difficult to see

1    those things.  I think he's going to be placed in a

2    situation in a prison setting where -- even an unfamiliar

3    hospital setting where he is going to be in a position of

4    not receiving adequate treatment.  So I would ask the

5    Court, whatever authority you have, whatever you can do, to

6    place him very close to family would be most appropriate.

7    And if his doctor could continue to monitor his condition,

8    I think that would be the best treatment possibility for

9    the time he will be incarcerated, given the benefit to the

10   extent they can test new medications and adjust

11   medications.  But I think to do that, it needs to be in a

12   facility nearby.

13        Beyond that, I just ask that he receive credit

14   for all the time he has been held in custody prior to

15   sentencing, ask that you direct that Martin receive

16   treatment for his mental illness, be held close by.  And

17   just as a final point, I -- as I said, I think the

18   guidelines are simply that, guidelines but not binding the

19   Court's hands.  I think the Court has the authority to act

20   in a just, yet merciful, fashion, and I would ask that you

21   give him an appropriate sentence less than the mandatory

22   minimum.

23        THE COURT:  Well, Miss Allen.

24        MS. ALLEN:  Your Honor, the government relies on

25   its sentencing memorandum.  And I would state to the Court

1    that I believe the cases -- Eighth Circuit cases of United

2    States versus Villar, V-i-l-l-a-r, 184 F.3d 801 (8th Cir.,

3    1999), and United States versus Rudolph, 970 F.2d 467,

4    (8th Cir. 1992), that they do control this case, and that

5    the mandatory minimum sentence does apply.

6           THE COURT:  Well, and as I have already

7    indicated, I believe the mandatory minimum does apply.

8    It's no secret that sometimes I don't agree with the

9    guidelines.  They are the law.  But the guidelines are one

10   thing, and the Court does have more discretion than it used

11   to under the guidelines because of the Koon case and other

12   decisions.  But then when you get to mandatory minimums,

13   that's another story.  And the Court does not have

14   discretion under that.  I'll state for the record that were

15   it not for the mandatory minimums, I would sentence the

16   defendant within the guidelines.  The guideline range is 41

17   to 51 months.  But that's not the case because mandatory

18   minimum applies.

19          With regard to some other matters that were

20   raised before sentence is entered, I want to state I have

21   in some instances departed downward because of endangerment

22   of a prisoner.  Usually that is based upon a prisoner's

23   physical make-up, and sometimes their offense of conviction

24   coupled with it.  In other words, victim profile.  A person

25   who is also a child sex offender is a common thing that I

1     have departed on.  There isn't, in my opinion, any basis of

2     endangerment to depart for Mr. Uphoff even if I had the

3     authority to do so.

4           I -- I've indicated that there's some difference

5     between the mandatory minimum and the sentencing guideline

6     range where I would prefer to be applying the sentencing

7     guidelines because it's just a mandatory number that

8     applies.  I don't find Eighth Amendment violations, even

9     though there is some difference between the sentencing

10    guideline and the mandatory minimum, but Congress has been

11    found to be to be within their authority in establishing

12    the mandatory minimums.

13          I cannot assume that the defendant will not get

14    adequate treatment, and I will make a recommendation for

15    what I hope will be adequate treatment.  I will recommend

16    credit for the time that the defendant has been in custody.

17          Would you please stand, Mr. Uphoff.  I usually

18    make a statement briefly before a sentence is entered.  I

19    recognize that there is a good side to you, and I think

20    that came through in your testimony, and in the trial, too,

21    to some extent, although it wouldn't sound like it to you

22    when you are the defendant and you are hearing all the

23    evidence against you.  But nonetheless I recognize there is

24    a good side to you.

25          But I do want to point out that what you did was

1   more -- it was arson.  That is why you are facing the

2   sentence you are.  And you have a complicated medical and

3   psychiatric profile, and I'm sorry for that.  I hope that

4   you get along as well as you can with that.

5       But the other part I want to point out, it makes

6   no difference to a victim the reason that they are a victim

7   for what you have done.  And I have to tell you that I am

8   concerned about you in the future because from what has

9   been told -- hopefully medication will help you with your

10   condition, but it doesn't make any difference to a victim.

11   You know, there have been two instances now, and I hope

12   that there isn't a third, and I hope that when there is a

13   third, that somebody doesn't get injured because they can.

14   So that's the other side of the coin.  You are a person of

15   intelligence, so you have to recognize that problem, too;

16   not only problems to yourself, but the problems you could

17   visit upon others.

18       Pursuant to the Sentencing Reform Act of 1984,

19   it's the judgment of the Court that the defendant, Martin

20   Uphoff, is hereby committed to the custody of the Bureau of

21   Prisons to be imprisoned for a term of 60 months on Count I

22   and six months on Count II, to be served concurrently.  It

23   is recommended that the defendant serve his sentence at the

24   U.S. Federal Medical Center in Rochester, Minnesota.

25       The Court finds the defendant does not have the

1   ability to pay a fine, and the Court waives the fine in

2   this case.  Mandatory drug testing is suspended based upon

3   the Court's determination that the defendant poses a low

4   risk of any future substance abuse.

5          Upon release from imprisonment, the defendant

6   shall be placed on supervised release for a term of three

7   years.  This term consists of terms of three years on Count

8   I and a term of one year on Count II, with those terms to

9   run concurrent.  Within 72 hours of release from the

10  custody of the Bureau of Prisons, the defendant shall

11  report in person to the probation office in the district to

12  which the defendant is released.

13         While you are on supervised release, Mr. Uphoff,

14  you are not commit another federal, state, or local crime,

15  shall not illegally possess a controlled substance, nor

16  possess a firearm or destructive device or other dangerous

17  weapon.  You shall comply with the standard conditions that

18  have been adopted by this Court, and comply with the

19  following special conditions:

20         That you shall submit to a warrantless search of

21  your person, residence or vehicle at the discretion of the

22  probation officer; that you shall undergo inpatient or

23  outpatient psychiatric and psychological treatment as

24  directed by the probation officer; that you shall waive the

25  medical privilege that you may have with any treating

1    doctor, physician or psychologist with regard to the

2    probation officer communicating with that person and that

3    person and his or her staff with regard to your condition

4    during the time of your supervised release.

5         It's further ordered the defendant shall pay the

6    United States a special assessment of $200, $100 per count,

7    which is due immediately.

8         You have the right to appeal from the trial and

9    the judgment.  And if you are going to appeal, you have to

10   file your notice of appeal within ten days after the

11   judgment is filed in your case, and probably be filed today

12   or tomorrow.  Do you understand that right of appeal?

13        THE DEFENDANT:  Yes.

14        THE COURT:  All right.  Thank you.  You may be

15   seated.

16        Is there anything further to come before the

17   Court on this matter?

18        MS. ALLEN:  Not from the government, Your Honor.

19        MR. HAUGAARD:  Your Honor, I think I did say it,

20   but I just want to clarify, he does get time -- credit for

21   time served?

22        THE COURT:  I recommend he does.  That is subject

23   to Bureau of Prison regulations.  My understanding is they

24   do consider that, and I do recommend it.

25        Very well.  We are in recess.

28

```
1      (End of proceedings at 12:03 p.m.)

2

3                      * * * * * * * * * * *

4

5      STATE OF SOUTH DAKOTA        )
                                    :SS        CERTIFICATE
6      COUNTY OF MINNEHAHA          )

7

8           I, Kerry Lange, Court Reporter in the above-named

9      County and State, certify that the above-entitled

10     proceedings were reported by me, and the foregoing Pages

11     1 - 27 , inclusive, are a true and correct transcript

12     of my stenotype notes.

13          Dated at Sioux Falls, South Dakota, this 13th day

14     of March, 2000.

15

16

17                              _____
                                        Kerry Lange

18

19

20

21

22

23

24

25
```